UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STATE FARM LIFE AND ASSURANCE
 COMPANY, INC.,

         Plaintiff,

  v.

DONALD T. EPPS,
DONTE R. SMITH,
DOUGLAS JOHNSON, as Parent and Guardian
 of Travante D. Johnson,
TRAVANTE D. JOHNSON, individually,
MARY MOSS, As Guardian of Armontae Moss,
ARMONTAE MOSS, individually, and
MARY MOSS, individually and as Custodian
 Under New York Uniform Transfers to Minors
 Act for Donte R. Smith, Travante D. Johnson,
 and Armonte Moss,

         Defendants.

**REPORT
and
RECOMMENDATION**

**12-CV-00380S(F)**

---

APPEARANCES:  GOLDBERG SEGALLA LLP
        Attorneys for Plaintiff
        DANIEL W. GERBER, and
        CARRIE PATRICIA APPLER, of Counsel
        665 Main Street
        Suite 400
        Buffalo, New York 14203

        MAGAVERN, MAGAVERN & GRIMM
        Attorneys for Defendants Donte R. Smith, TraVante D.
        Johnson, Mary Moss, and Armontea Moss
        CHERYL SMITH FISHER, of Counsel
        1100 Rand Building
        14 Lafayette Square
        Buffalo, New York 14203

## **JURISDICTION**

This case was referred to the undersigned by Honorable William M. Skretny on

May 23, 2013, for report and recommendation on dispositive motions (Doc. No. 37). The matter is presently before the court on Plaintiff's motion for interpleader relief (Doc. No. 19), filed September 28, 2012.

## BACKGROUND

On April 30, 2012, Plaintiff State Farm Life and Assurance Company ("Plaintiff" or "State Farm"), commenced this action seeking interpleader relief as an innocent stakeholder facing multiple liability arising from Defendants' competing claims to the proceeds of a life insurance policy issued by State Farm to Angela Moss ("Moss" or "the insured"). Defendants to this action include the insured's fiancé Ronald T. Epps ("Epps" or "Defendant Fiancé"), who is the primary insurance policy's primary beneficiary, and Moss's children Donte Smith ("Smith"), TraVante Johnson ("Johnson"), and Armontae Moss ("A. Moss"), with Mary Moss acting as custodian under New York's Uniform Transfers to Minors Act of Defendants Smith, Johnson, and A. Moss ("Defendant Children"), who are named in the insurance policy as the successor beneficiaries. State Farm specifically seeks to deposit the death benefit proceeds with this court, thereby discharging State Farm from all liability in connection with the life insurance policy, an order directing Defendant Fiancé and Defendant Children to litigate the proper recipient of the proceeds.

On September 28, 2012, Plaintiff filed the instant motion for interpleader relief (Doc. No. 19) ("Plaintiff's motion"), supported by the attached Affidavit of Carrie Appler, Esq. (Doc. No. 19-1) ("Appler Affidavit"), with exhibits A through E (Docs. Nos. 19-2 through 19-6) ("Appler Affidavit Exh(s). __"), the Affidavit of Eileen Pyritz (Doc. No. 19-

7) ("Pyritz Affidavit"), with exhibits A through I (Doc. Nos. 19-8 through 19-16) ("Pyritz Affidavit Exh(s). __"), and the Memorandum of Law in Support of Motion for Interpleader Relief (Doc. No. 20) ("Plaintiff's Memorandum").  On October 25, 2012, Defendant Children filed the Affirmation of Cheryl Smith Fisher, Esq. in Response to Plaintiff's Motion for Interpleader Relief (Doc. No. 24) ("Smith Fisher Affirmation"), and the Memorandum of Law in Opposition to Plaintiff's Request for Attorney's Fees (Doc. No. 25) ("Defendant Children's Memorandum").  Defendant Epps did not file a response to Plaintiff's motion.  In further support of Plaintiff's motion, Plaintiff filed on November 1, 2012, the Reply Attorney Affidavit of Carrie Appler, Esq. (Doc. No. 27) ("Appler Reply Affidavit"), and the Reply Memorandum of Law in Further Support of Plaintiff's Request for Attorney's Fees (Doc. No. 28) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion should be GRANTED.

## FACTS[1]

On April 14, 2006, Plaintiff State Farm Life and Assurance Company ("Plaintiff" or "State Farm"), first issued Angela Moss ("Moss" or "the insured"), term life insurance policy No. AS-0094-1294 ("the term policy"), providing for a death benefit of $ 100,000, designating as joint beneficiaries Moss's fiancé Defendant Ronald T. Epps ("Epps" or "Defendant Fiancé"), and a minor child.  On July 2, 2009, the insured and Epps went to a State Farm office located within the Western District of New York to convert the term

---

[1] Taken from the pleadings and motion papers filed in this action.

3

policy to a universal policy and change the beneficiaries.[2] On July 27, 2009, State Farm re-issued the Policy as Universal Insurance Policy No. AS-0113-7697 ("the Policy"), designating Epps as the Policy's primary beneficiary, and designating as successor beneficiaries Moss's children, namely Defendants Donte Smith ("Smith"), TraVante Johnson ("Johnson"), and Armontae Moss ("A. Moss") ("Defendant Children"), with Mary Moss[3] nominated as custodian under New York's Uniform Transfers to Minors Act of Defendant Children. On August 28, 2009, Moss's body was discovered on California Drive, Orchard Park, New York. The Erie County Medical Examiner who autopsied Moss concluded her death was a homicide, indicating on the death certificate that Moss was a victim of homicide caused by a gunshot wound to her head.

On September 1, 2009, an investigator with the Orchard Park Police Department first advised State Farm that Epps was a "person of interest" in Moss's murder, a statement which repeated to State Farm at least six times between September 24, 2009 and July 20, 2010, in connection with requests for investigative assistance. Such assistance included, *inter alia*, a Grand Jury Subpoena Duces Tecum served by Assistant Erie County District Attorney Colleen Curtin Gable on State Farm Agent Kathleen Clouden requesting disclosure of life insurance policy records for Moss.

Also on September 1, 2009, Epps submitted a form claiming the $ 100,000 death benefit due Epps as the Policy's primary beneficiary. Because Epps had been identified as a "person of interest" in Moss's death, State Farm withheld payment until

---

[2] Moss also unsuccessfully sought to increase the death benefit of the Policy from $ 100,000 to $150,000.

[3] Mary Moss is the Insured's mother.

4

Epps was cleared of suspicion in the insured's death.  On September 22, 2011, a separate form claiming the Policy's $ 100,000 death benefit was submitted by Smith, Johnson, and A. Moss as the insured's successor beneficiaries.  On September 27, 2012, Epps was indicted in this court on multiple violations of federal criminal law including, *inter alia*, mail fraud and wire fraud relevant to Epps's attempt to collect the death benefit under the Policy.  The criminal matter against Epps, *USA v. Epps*, 12-CR-00305, remains pending.

## DISCUSSION

Plaintiff seeks as interpleader relief an order (1) permitting State Farm to deposit with the District Court the death benefit payable under the Policy, plus applicable interest; (2) compelling Defendants to litigate their competing claims to the Policy's proceeds; (3) discharging State Farm from any further liability under the Policy to Defendants; (4) enjoining Defendants from commencing any other action against State Farm relative to the Policy's proceeds; (5) awarding State Farm $ 2,000 in attorney's fees and costs to be deducted from the Policy's proceeds; and (6) dismissing State Farm from this action with prejudice.  Defendant Children oppose Plaintiff's motion only insofar as Plaintiff seeks an award of $ 2,000 in attorney's fees and costs.  Defendant Children's Memorandum at 2-3.  In further support of its motion, State Farm asserts it is entitled to an award of attorney's fees and costs because this matter involves distinct and unique issues outside the scope of State Farm's ordinary course of business.  Plaintiff's Reply at 2-5.

"An interpleader action is appropriate when a stakeholder " legitimately fears

multiple [liability] directed against a single fund," regardless of the merits of the competing claims." *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992) (quoting *Krishna v. Colgate Palmolive Co.*, 1991 WL 125186 (S.D.N.Y. June 27, 1991) (quoting 7 Charles Wright, *et al.*, Federal Practice & Procedure § 1704, at 501 (2d ed. 1986) (further quotation marks omitted)). "An interpleader action is normally conducted in two stages, the first to determine whether a stakeholder is entitled to bring an interpleader action, and the second to determine the rights of the competing claimants to the fund." *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988). This action is before the court on the first stage, *i.e.*, whether Plaintiff may bring an interpleader action. Should the plaintiff stakeholder prevail at the first stage, then after the subject funds are deposited with the court, the stakeholder is discharged from the litigation leaving the adverse claimants to litigate their dispute between themselves. *Republic of China v. American Express Co.*, 195 F.2d 230, 234 (2d Cir. 1952). Once the first stage for interpleader relief has been established, all those claiming an interest in the deposited funds must enter the action to settle their claims against the funds. *Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297, 305 (S.D.N.Y. 2001). The court has ancillary jurisdiction over all Defendants for purposes of adjudicating their competing claims to the funds. *Id*. (where jurisdiction in an interpleader action is based only on diversity, the discharge of the disinterested stakeholder plaintiff will not destroy original diversity jurisdiction because subsequent litigation between the claimants will be ancillary to the original action for which initial diversity jurisdiction was sufficient). "[T]he court proceeds to adjudicate the claims before it just as it would in any other civil action." *Avant Petroleum, Inc.*, 853 F.2d at 143. "The issues are defined by the

6

pleadings of the parties before the court and, in the absence of special circumstances, the court normally determines the rights of the parties on the basis of the facts as they existed at the time the action was commenced." *Id.*

There are two forms of interpleader: procedural interpleader is provided for under Fed.R.Civ.P. 22 ("Rule 22"), whereas statutory interpleader is available under 28 U.S.C. § 1335, the two differing with regard to jurisdictional, venue and other requirements. *Feehan v. Feehan*, 2011 WL 497852, at * 3 (S.D.N.Y. Jan. 10, 2011) (citing *Weininger v. Castro*, 462 F.Supp.2d 457, 499 n. 33 (S.D.N.Y. 2006)). Plaintiff's interpleader claim is brought pursuant to Fed.R.Civ.P. 22 which provides for an interpleader action over which a federal court has jurisdiction based either upon a general federal question or diversity of citizenship. *6247 Atlas Corp. v. Marine Ins. Co., Ltd., No. 2A/C*, 155 F.R.D. 454, 461 (S.D.N.Y. 1994). Here, because Plaintiff's citizenship is diverse from that of every claimant, and the amount in controversy, $ 100,000, exceeds the jurisdictional threshold of $ 75,000, there is jurisdiction based on 28 U.S.C. § 1332.[4] *Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir. 2000) (citing *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 953 (2d Cir. 1953)).

Rule 22, as relevant, provides that persons with adverse claims may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Fed.R.Civ.P. 22(a)(1)(A). Rule 22 "is designed to insulate a stakeholder from contradictory judgments and multiple liability and to relieve a stakeholder from having to determine which claim among several is meritorious." *John*, 141 F.R.D. at 33.

---

[4] Plaintiff does not allege, nor do Defendant Children assert, that the requirements for statutory interpleader under 28 U.S.C. § 1335 are met, and the court does not consider the question.

Here, Plaintiff seeks to deposit the $ 100,000 death benefit Policy proceeds with the court, and a court order relieving Plaintiff of all further liability relative to such proceeds and dismissing Plaintiff from this action. If such relief is granted, Defendants may then continue to litigate their competing claims to the proceeds. Specifically, if Epps did murder Moss, then Epps, although denominated at the Policy's primary beneficiary, is precluded from collecting the Policy's death benefit under New York law which prohibits one from profiting from the murder of another. *See*, *e.g.*, *Connecticut General Life Insurance Co. v. Cole*, 821 F.Supp. 193, 198 (S.D.N.Y. 1993) (recognizing under New York law, a person may not lawfully profit from the murder of another person (citing *Riggs v. Palmer*, 22 N.E. 188 (N.Y. 1889))); *Boatwright v. New York Life Ins. Co.*, 409 N.Y.S. 2d 860, 860 (4th Dep't 1978) (insurance company not required to pay life insurance policy proceeds to beneficiary who intentionally killed insured (citing cases)).[5] Conversely, Defendant Children, as successor beneficiaries, are entitled to the Policy's death benefit only if such benefit is not payable to the primary beneficiary. As stated, Epps has not responded in opposition to Plaintiff's motion, and Plaintiff's motion is opposed by Defendant Children only insofar as Plaintiff seeks an award of $ 2,000 for reduced attorney's fees and costs incurred in connection with this action.

With regard to Plaintiff's request for an order permitting Plaintiff to deposit the proceeds of the Policy with the court, Fed.R.Civ.P. 67 provides that

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party – on notice to every other party

---

[5] Although the Policy does not specifically prohibit the payment of proceeds to any beneficiary determined to be the insured's killer, the Policy does state that the Policy's proceeds will only be paid in accordance with the "laws and regulations related to the payment of the claim or administration of the business of insurance." Policy at 15 (Payment of Benefits Provisions).

> and by leave of court – may deposit with the court all or part of the money or thing, whether or note that party claims any of it. . . .

Fed.R.Civ.P. 67(a).

Because Plaintiff's request to deposit the Policy's $ 100,000 death benefit proceeds with the court is unopposed, and given that Defendant Fiancé and Defendant Children have filed competing claims to such proceeds, thereby exposing Plaintiff to liability should Plaintiff, as an innocent stakeholder, pay the claim of the party whom it is eventually established is not entitled to such payment, the only issue remaining before the undersigned is whether to award Plaintiff $ 2,000 in costs and attorney's fees in connection with this action.

A federal district court "has discretion to award reasonable attorneys' fees and costs to a disinterested stakeholder in an action brought under the interpleader statute." *Guardian Life Ins. Co. of America v. St. Ange*, 2012 WL 463894, at * 2 (S.D.N.Y. Feb. 8, 2012) (citing *Septembertide Publishing, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989). When awarded, attorney's fees and costs "are generally awarded against the interpleader fund, but may, in the discretion of the court, be taxed against one of the parties when their conduct justifies it." *Septembertide Publishing, B.V.*, 884 F.2d at 683 (citing *Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497-98 (11th Cri. 1986)). Such costs may be awarded in an interpleader action to a plaintiff who (1) is a disinterested stakeholder; (2) has conceded liability; (3) has deposited the disputed funds into court; and (4) has sought to be discharged from liability as to the funds. *Septembertide Publishing, B.V.*, 884 F.2d at 683 (citing 3 A. Moore's *Federal Practice* § 2.16[2] (2d ed. 1989)). An insurance company in possession of funds subject to two or

more adverse claims is a disinterested stakeholder who may recover such costs under the interpleader statute. *St. Ange*, 2012 WL 463894, at * 2. Nevertheless, Plaintiff may be awarded only those expenses that are not "properly viewed as part of the costs of doing business as an insurance company." *St. Ange*, 2012 WL 463894, at * 2.

In the instant case, Defendant Children, although not challenging that Plaintiff meets the four factors set forth in *Septembertide Publishing, B.V.*, contend that the costs Plaintiff incurred in bringing this interpleader action are associated only with minor problems that arise during an insurer's ordinary course of business and therefore should not be awarded as costs to Plaintiff. Defendant Children's Memorandum at 2-3. As such, Defendant Children urge the court to deny Plaintiff's request for $ 2,000 in attorney's fees and costs. In further support of Plaintiff's motion for costs, Plaintiff asserts that the instant action involves unique problems outside the ordinary course of business requiring extensive efforts to litigate. Plaintiff's Reply at 2.

As stated, it is within the district court's discretion whether to award Plaintiff attorney's fees and costs in connection with the instant interpleader action. While some courts have awarded such fees and costs under similar circumstances, *see, e.g.*, *St. Ange*, 2012 WL 463894, at * 2 (awarding insurance company attorney's fees in connection with interpleader action regarding $ 40,000 life insurance proceeds against which claims were anticipated to be asserted both by primary beneficiary, convicted of insured's murder, and contingent beneficiary); *see also Travelers v. Estate of Garcia*, 2003 WL 1193535, at *4 (E.D.N.Y. Feb. 4, 2003) (awarding insurer attorney's fees in interpleader action brought to resolve competing claims to life insurance policy proceeds); *Fidelity Brokerage Services, LLC v. Bank of China*, 192 F.Supp.2d 173, 182

(S.D.N.Y. 2002) (awarding attorney's fees and costs to innocent otherwise disinterested stakeholder who expended time and money participating in dispute not attributable to such stakeholder, and the outcome of which will have not impact on him), while other courts have not. *See, e.g., Travelers Indemnity Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary costs of doing business of their insured by bringing an action for interpleader."); *Feehan v. Feehan*, 2011 WL 497852, at *7-8 (S.D.N.Y. Jan. 10, 2011) (declining to award attorney's fees and costs where interpleader action was not complex, involved no unique problems, and insurer seeking interpleader provided no unique services and failed to explain how any court submissions exceeded the ordinary cost of doing business), *adopted by* 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011). In the instant case, the circumstances which prompted Plaintiff to commence this action seeking interpleader relief support Plaintiff's requested award of attorney's fees and costs.

In reply to Defendant Children's assertion that Plaintiff seeks interpleader relief with regard to the type of conflicting claims which insurance companies routinely encounter in daily business, Defendant Children's Memorandum at 3, Plaintiff describes several distinct actions Plaintiff was required to perform in connection with the Policy falling outside the scope of Plaintiff's ordinary course of business. Plaintiff's Reply at 2-5. In particular, two of Moss's three children named as successor beneficiaries were, when this action was commenced, infants under New York C.P.L.R. § 105(j), requiring service of process pursuant to Fed.R.Civ.P. 4(g), and N.Y. C.P.L.R. § 309, under which

service on a minor is to be made upon the minor's parent, guardian, or any person having legal custody of the infant or, if none are available, upon any other person with whom the infant resides. Plaintiff's Reply at 2-3. As such, Plaintiff had to conduct an investigation outside the ordinary course of business to identify the proper parties to effect service on the minor beneficiaries. *Id.* The investigative work included determining (1) the names of the minor beneficiaries' parents and their location; (2) whether either child had a guardian; (3) whether any person other than a parent or guardian has legal custody over either child; and (4) the residence of each child. *Id.* at 3. Plaintiff also had to locate the correctional facility in which Defendant Epps was residing when the action was commenced. *Id.*

Plaintiff was also required to cooperate in responding to multiple inquiries from law enforcement officials regarding the circumstances surrounding the placement of Moss's Policy, which the U.S. Attorney's Office for the Western District of New York ultimately determined was the motive for Moss's murder. Plaintiff's Reply at 3. As a result, Plaintiff had to consult with relevant law enforcement regarding the filing of its motion for interpleader relief to avoid interfering with the investigation of Moss's murder. *Id.* Plaintiff asserts that these various tasks were outside the scope of its ordinary course of business, and totaled in excess of $ 15,000 in attorney's fees, of which Plaintiff seeks to recoup only $ 2,000. *Id.* Moreover, these expenses are in no way attributable to any fault of Plaintiff, and could not have been avoided given the circumstances of the insured's death. *Id.* at 4-5.

Under these circumstances, the court, in its discretion, should find Plaintiff was required to expend time and effort beyond its ordinary course of business in bringing

12

this interpleader action supporting an award of attorney's fees and costs in the amount of $ 2,000.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 19), should be GRANTED; Plaintiff should be (1) permitted to deposit the Policy's $ 100,000 death benefit proceeds with the court; (2) dismissed from the action with prejudice; (3) discharged from any further liability under the Policy to Defendants; and (4) awarded attorney's fees and costs in the amount of $ 2,000; Defendants should be (1) compelled to litigate their competing claims to the Policy's proceed; and (2) enjoined from commencing any further litigation against State Farm relative to the Policy's proceeds. The matter should be remanded for further proceedings regarding Defendants' litigation of their competing claims to the funds.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 10, 2013
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: June 10, 2013
          Buffalo, New York